JOHN P. KNOWLES *vs.* CHARLES W. DABNEY & others.
CHARLES S. RANDALL *vs.* SAME.

Upon a contract, with no express exception against any perils, to ship and transport certain casks of oil from one seaport to another, the contractor is liable for a loss of the oil, occasioned while shipping it in the first port, either by a peril of the sea which resulted in breaking the ship's tackle attached to the cask for the purpose of hoisting it on shipboard from a lighter, or by the breaking of the tackle of a crane standing on the pier and used for loading the oil upon the lighter, and the consequent fall and breakage of the cask.

TWO ACTIONS OF CONTRACT, each to recover the value of a cask of sperm oil and damages for the defendants' failure to transport it from Fayal in the Azores and deliver it at New Bedford.

The declaration in the first case alleged that the defendants entered into a contract with the plaintiff's agent, Charles W. Parker, on September 27, 1867, at Fayal, of which the following was a memorandum bearing that date and signed by the defendants:

"Received from Captain Charles W. Parker, of barque Laconia, of New Bedford, nine casks, containing 2356 gallons of

sperm oil, more or less, which we engage to ship to New York, or some port in the United States to the eastward of it, for the sum of one dollar and twenty-five cents in gold per barrel of thirty-one and a half gallons, subjecting the oil to the charges of such expenses as we may pay upon it in Fayal, and furthermore to the charge of forty cents per barrel for storage and commission, the whole payable in gold on delivery of the oil. Not accountable for leakage."

The declaration further alleged that the plaintiff performed all stipulations of the contract to be performed on his part, and paid the defendants the amount stipulated to be paid by him to them, and that the defendants elected the port of New Bedford as the place of delivery of the oil, but had not delivered at that port, nor shipped to any port described in the contract, the full quantity of oil, but only 2026 gallons thereof, and the remaining 330 gallons were not lost by leakage.

The answer admitted that the defendants received the nine casks of oil from Captain Parker at Fayal, and gave the memorandum set forth in the declaration; and continued as follows:

"And the defendants say, that the harbor of Fayal is an open roadstead; that vessels cannot approach the shore nearer than from one half to three fourths of a mile, according to their draught of water; and that the loading and discharging of all vessels at said port is, and for a period of time long prior to 1867 has been, done by means of lighters; that all of these facts were well known to the plaintiff and his agent, Captain Parker, at the time of the delivery of the oil to the defendants, and it was with a full knowledge of said facts by all parties interested that the receipt declared on was given and received; and that the terms of the receipt contemplated the lighterage of the oil from the Laconia to the shore, the storage and general care of the same while on shore, the relighterage of the same at some future time to vessel in the roadstead, and the final shipment of the same by the defendants to the United States.

"And the defendants say that the oil was received by them from the Laconia as aforesaid, and stored and cared for by them, at Fayal, till an opportunity offered to ship the same to the

United States ; that, in accordance with the terms of the receipt, the defendants had chartered the barque White Wing to convey this and other oil to New Bedford, and said barque had already received a portion of her cargo, when on December 10, 1867, in the early part of the forenoon, a lighter load of this oil was sent from the shore alongside of the said White Wing for the purpose of putting the same on board, and two casks of the same had been taken on board said vessel, and the tackle of the barque had been securely fastened to a third cask, and the men of the barque had commenced to hoist the same on board, when a heavy sea caused the barque and lighter to roll suddenly, and separate somewhat from each other at the same time, the tackle of the barque in the mean time remaining fast to the cask, by means of which the cask was suddenly jerked from the lighter and brought forcibly against the side of the barque, causing one of the heads of the cask to fly out, and spilling the whole contents of the cask into the sea.

"And the defendants say that the whole quantity of oil received by them from the Laconia was delivered by them, within a reasonable time, to the plaintiff at New Bedford, excepting only the contents of said cask, and such additional quantity as may have been lost by leakage, for which latter cause of loss they were by the express terms of the receipt exempt.

"And the defendants say, that whatever, by the terms of the receipt, may have been their liability on account of the oil after the actual shipment of the same on board vessel for the United States, they were liable up to that time as warehousemen and ordinary bailees for hire only, that is to say, only for want of due care ; and they say that they did exercise due and proper care over said oil in all respects, and that the said loss was from a cause wholly beyond their control, and for which they neither assumed, nor intended to assume, nor were understood to assume, any responsibility.

"And the defendants say, that they neither charged nor received compensation for any risk of loss by lighterage of the oil to and from ship, or for any risk of loss or damage by the use of any other instrumentalities necessarily or properly used by them

from the time of the actual receipt of the oil from the Laconia to the actual reshipment of the same on board vessel in the roadstead for transportation to the United States; that the one dollar and twenty-five cents in gold per barrel, named in the receipt, was understood by all parties to be for the freight of the oil from the point of actual shipment of the same in the roadstead to the place of discharge in the United States, and the forty cents in gold per barrel was also mutually understood to be in part for storage and in part for commissions, including under this latter term payment for the defendants' services in superintending the necessary operations required in carrying out the objects contemplated by the receipt; that by the terms of the receipt the oil was subjected to such charges and expenses as the defendants should pay upon it in Fayal in addition to the one dollar and twenty-five cents and forty cents per barrel aforesaid; and that, in accordance therewith, the defendants charged, and were paid by the plaintiff, the expenses of lighterage to and from the shore, expenses and charges for craneage, the duties, cooperage, cartage and all other incidental expenses of the oil while it remained in the hands of the defendants at Fayal, the defendants acting in relation to all matters outside of the storage of the oil at Fayal, and the freightage of the same to the United States, simply as the ordinary hired agents of the plaintiff."

The facts in the second case, as they appeared from the declaration and answer, showed that the defendants entered into a contract with the plaintiff Randall's agent at Fayal, and signed a memorandum thereof, similar in terms with the contract and memorandum or receipt in the first case, for the transportation to the United States of nineteen casks containing 6052 gallons of sperm oil; that they elected New Bedford as the place of delivery of the oil; and that they delivered there the full quantity except one cask, which was broken and the contents lost under circumstances described in the answer as follows:

"That the only means of landing cargo upon the shore at Fayal, or taking the same therefrom for shipment, was, at the time of the transaction in question, and ever since has been, by means of a crane erected upon a pier, which crane belongs to the

government of said island of Fayal, and is equipped, managed and controlled wholly by the officials and employees of said government, the same being an instrumentality for the collection of its revenue, all of which facts were well known to the plaintiff and his agent at the time of the delivery of the oil to the defendants, and it was with reference to a full knowledge of said facts by all parties interested that the receipt declared on was given and received; that the terms of the receipt contemplated the lighterage of the oil to the shore, the landing of the same upon the shore by means of said crane, the reloading of the same on board lighters by means of said crane, and the relighterage of the same to vessels in the roadstead; that while the oil was being loaded on board lighters by means of the crane, for the purpose of conveying the same to vessels in the roadstead for shipment to New Bedford, in accordance with the terms of the receipt, one cask of the same was badly stove, owing to the breaking of the chain slings of the crane, while said cask was suspended thereby, and in the act of being swung over the lighter, the cask, in consequence of the breaking of the chain slings, having been precipitated from the height of several feet into the bottom of the lighter, greatly damaging the lighter at the same time; and that the said cask of oil was stove as aforesaid while the same was necessarily out of the defendants' possession and control, and in the hands and possession of the government officials of said Fayal, the said government having the entire ownership, management and control of the said crane, and working the same through its own employees, to the exclusion of all other persons, the said crane being the only instrumentality by which oil could be loaded upon lighters at that time, and all persons being compelled by government regulations to resort to said instrumentality for that purpose."

At the trials, in the superior court, before *Putnam,* J., the plaintiffs contended that they were entitled to recover upon the facts admitted in the answers; and verdicts were thereupon taken in their favor, by consent, and the cases reported, the verdicts to stand if they were entitled to recover upon the admitted facts, otherwise new trials to be granted.

*A. Borden*, for the defendants.

*G. Marston & C. W. Clifford*, for the plaintiffs.

GRAY, J. The writings signed by the defendants, upon receiving the plaintiffs' oil, were absolute engagements to ship and transport it from Fayal to the United States, containing no exception of perils of the seas, nor any other express exception, unless the stipulation that they should not be accountable for leakage could be deemed such. The defendants therefore, and not the plaintiffs, assumed the risk of the performance of the agreement being prevented by a peril of the seas, (either after the oil had been put upon board the ship, or while it was in the lighters in which it was brought to the ship from the shore,) or by a breaking of the tackle used for loading the oil upon the lighters. *Wareham Bank* v. *Burt*, 5 Allen, 113. *Gage* v. *Tirrell*, 9 Allen, 299, 303. *Barker* v. *Hodgson*, 3 M. & S. 267. *Spence* v. *Chodwick*, 10 Q. B. 517.

*Judgment on the verdicts for the plaintiffs.*